

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00463-CR

Stanley **WALKER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR1626
Honorable Ron Rangel, Judge Presiding

Opinion by: Sandee Bryan Marion, Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: January 30, 2013

AFFIRMED

A jury convicted appellant, Stanley Walker, of aggravated robbery with a deadly weapon and unlawful possession of a firearm. The trial court assessed punishment at twenty years' confinement and five years' confinement, respectively, in addition to a $3,000 fine on each count. On appeal, appellant argues (1) the evidence was insufficient to convict him of the offense of aggravated robbery with a deadly weapon, and (2) the evidence was insufficient to convict him of the offense of unlawful possession of a firearm. We affirm.

## SUFFICIENCY OF THE EVIDENCE

In reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We look to whether the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Deference is given to the jury's credibility and weight determinations, and to their duty to resolve conflicts in the testimony. *Id.*

### A. AGGRAVATED ROBBERY

A person commits aggravated robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. § 29.02–.03 (West 2010).

Parvez Narsingani, a gas station attendant, was robbed at gunpoint on October 25, 2008. According to Narsingani, a thin black man of athletic build, approximately 5'10"-5'11" tall, wearing a ski mask, a dark shirt, and dark shorts came into the empty convenience store while Narsingani was working. The man displayed a semi-automatic pistol, cocked the gun to load the weapon, and, pointing it at Narsingani's head, demanded money from the cash register. The man instructed Narsingani to place the money in a black plastic bag and Narsingani complied. After placing approximately $350 in the black bag, the robber told Narsingani to get on the floor and count to twenty. As soon as Narsingani heard the door chime, signaling the robber had left the store, he got up and ran outside as he dialed 911. Narsingani saw the robber, without his ski mask on, getting into the passenger seat of a silver Mercury Cougar. Narsingani provided the

description of the car, including the license plate number, to the 911 operator and the car sped off.

A search of records revealed the vehicle Narsingani described belonged to appellant's sister, Roberta Chase. The vehicle was located approximately one hour after the robbery when a San Antonio Police Department officer, Officer Remmers, noticed the vehicle as he was patrolling the area. Remmers followed the car as it pulled up to a house, and Remmers then waited for backup while he maintained sight of the suspects. Remmers testified he saw three men get out of the vehicle. Once backup arrived, the police officers detained the three men and searched the vehicle. Inside the vehicle trunk liner, police found a semi-automatic handgun, $350 cash in a black plastic bag, and a black ski mask. The police took Narsingani to the location to positively identify the vehicle and the robber. Narsingani immediately identified appellant as the robber. Appellant, who was 5'10" and 163 lbs., matched the physical description given by Narsingani after the robbery. However, at the time of Narsingani's identification, appellant was no longer wearing the dark shirt Narsingani had described him as wearing at the time of the robbery; he was now wearing a lighter colored shirt. Later, once appellant was in custody, Narsingani again positively identified a photograph of appellant as the robber.

Narsingani also identified a photograph of the black plastic bag found in the trunk of the vehicle as the same black plastic bag in which he had placed the money from the cash register. He also identified photographs of the handgun and the cash found in the vehicle—which was three dollars short of what Narsingani reported taken from the register. The ski mask found in the vehicle was sent to the crime lab for testing. A forensic scientist testified at trial that a DNA profile taken from the mask matched the DNA profile of appellant and also had the DNA of another unknown individual on it.

The State introduced the testimony of ten witnesses including Narsingani, a fingerprint examiner, a forensic DNA analyst, a forensic firearm analyst, and four police officers of the Kirby, Judson ISD, and San Antonio Police Departments who either responded to the robbery or assisted in apprehending and questioning the suspects after the robbery. At trial, Narsingani was unable to identify appellant. He attributed this to the amount of time (over two years) that had passed between the robbery and the trial. However, Narsingani testified that he had been certain of his identification of the robber when he made the identification the same night the robbery occurred.

The defense relied upon the theory of misidentification. During his interrogation after the robbery, appellant admitted to detectives he had been at Narsingani's convenience store that day, but stated he was only there to purchase a soda. Defense counsel argued that Narsingani identified appellant as the robber only because he was familiar with appellant's face from when he purchased a soda earlier in the day.

Additionally, appellant argues on appeal that Narsingani's identification was insufficient to identify appellant because at the time of his arrest he was wearing a light colored shirt when Narsingani had described the robber as wearing a dark colored shirt. Narsingani testified he identified appellant after the robbery because he recognized appellant's body build and his face. Narsingani also stated he noticed appellant's shirt was a different color, but he had the same black shorts on. On cross-examination Narsingani was questioned about his identification:

> [Defense counsel]: And so your primary identification was based on the clothing or what? What was your primary identification based on when you — when you saw the three gentlemen?
>
> [Narsingani]: I had seen him — a little bit of his face when he got into the car.

Remmers testified that as he was observing the three men while waiting for backup he saw one of the men go into the house for approximately two or three minutes, but he could not tell which man it was.

Appellant also argues that because DNA of another unknown individual was present on the ski mask, the DNA evidence was insufficient to prove his guilt. Michelle Bonnette, a DNA analyst, testified that there was an incomplete DNA profile of another individual on the ski mask in addition to the complete profile she was able to match to appellant. Bonnette was questioned about the other individual's DNA at trial:

> [Defense Counsel]: Okay. So there was another complete unique individual's DNA in this mask?
>
> [Bonnette]: I didn't get a complete profile from that other person. They're only present at a few locations.
>
> [Defense Counsel]: Explain that.
>
> [Bonnette]: So if we look at 15 different locations on the DNA profile . . . when there's not a lot of DNA present, you won't get a complete profile. So whoever this second individual is, it's there in a very, very low quantity or been there so long it's just degraded, and so then I'm not able to get a full profile from that person. I'm only able to get the profile that's in the most quantity there. This other profile is less present, so it's less visible when I'm doing the DNA profiling.
>
> [Defense Counsel]: Could it have been someone who had the mask on for only a very brief period of time, like maybe a minute?
>
> [Bonnette]: There's no way to know for sure how long either one of the profiles had been on there. But there is a profile of someone who — consistent with [appellant's] profile that is on the mask, and there is a second profile.

Bonnette clearly explained that while there may have been a second incomplete DNA profile of another individual who wore the ski mask at some time, the complete DNA profile that matched appellant's was still found on the ski mask. As to the complete profile she matched to appellant, she testified that the probability of the DNA sample matching another black male were one in 9.542 billion.

Two defense witnesses presented a theory that it was not appellant, but instead Thomas Luckey and Omar Rollings who committed the robbery when they borrowed appellant's sister's car to go to the store that day. Luckey and Rollings were the two other men who were arrested for the robbery after Remmers found the suspect vehicle. Appellant's sister, Roberta Chase, testified that she met appellant at the library the afternoon of the robbery to switch cars with him. Appellant left the library in her Mercury Cougar. According to Chase, appellant told her he had taken her vehicle to play dice at a friend's house and two of his friends had asked him if they could borrow the vehicle to go to the store. She stated she did not know which two friends had asked to borrow the vehicle. When the two men came back, they parked the car illegally and appellant told Chase that a police officer asked them to turn the car around in order to be legally parked on the street. Next, Chase said, "[w]hen he got back and the police told him to turn the car around or told them to turn the car around and they did, and he went back inside, and next thing you know — next thing I know, they called me and told me I needed to get my car from the pound."

Chase also testified that she did not keep a black ski mask in her car and that she did not know her brother to ever wear one. However, to explain why appellant's DNA was found on the mask, Chase said her brother may have worn a ski mask if he was cold because he was anemic and it was cold in October.

Appellant's friend, Darion Baldwin, testified that on the day of the robbery he had been at his grandmother's house with appellant, Luckey, and Rollings. According to Baldwin, Luckey and Rollings borrowed appellant's sister's car to go to the store to get cigars. Baldwin said he could not remember whether the men came back with any cigars, and he did not remember exactly how long they were gone but he guessed it was approximately ten minutes. Baldwin testified that later that evening, as appellant was leaving, Luckey and Rollings asked him for a

ride and all three men left in appellant's sister's vehicle together.  On cross-examination, Baldwin could not remember what time of the day these events occurred.

We defer to the jury's credibility and weight determinations.  *Hooper*, 214 S.W.3d at 13. "The jury may choose to accept or reject all or part of the testimony, and we must resolve any conflicts and inconsistencies in the evidence in favor of the jury's verdict."  *Sony v. State*, 307 S.W.3d 348, 354 (Tex. App.—San Antonio 2009, no pet.).  We can infer from the verdict that the jury discredited the testimony of Chase and Baldwin.  Viewing the evidence in the light most favorable to the verdict, we conclude there was sufficient evidence for a rational juror to find appellant guilty of the offense of aggravated robbery.

## B.  UNLAWFUL POSSESSION OF A FIREARM

A person commits the offense of unlawful possession of a firearm if he has been convicted of a felony and he possesses a firearm after his felony conviction and before the fifth anniversary of the person's release from confinement or from community supervision.  TEX. PENAL CODE ANN. § 46.04.

At trial, the State introduced as Exhibit 1 the judgment demonstrating appellant was previously convicted of the felony offense of possession of marijuana on November 29, 2006. Gina Martinez, a fingerprint examiner with the Bexar County Sheriff's Department, testified she compared the fingerprints in Exhibit 1 with appellant's fingerprint card at the time of trial to ensure appellant was the same person who had been convicted of the prior felony offense.  In her opinion, the fingerprints in Exhibit 1 and the fingerprints of appellant were "one and the same."

The aggravated robbery occurred on October 25, 2008—less than two years from the date of appellant's felony conviction.  We have concluded there was sufficient evidence to convict appellant of the offense of aggravated robbery with a deadly weapon—in this case, a handgun. The offense occurred prior to the fifth anniversary of appellant's release from confinement for

his previous felony conviction.  Accordingly, we also conclude there was sufficient evidence to convict appellant of the offense of unlawful possession of a firearm.

## CONCLUSION

We conclude the evidence was sufficient to find appellant, a convicted felon, guilty of the offense of aggravated robbery with a deadly weapon.  Because the evidence established the offense occurred prior to the fifth anniversary of appellant's release from confinement for his prior felony conviction, we also conclude there was sufficient evidence to find appellant guilty of unlawful possession of a firearm.  We affirm.

Sandee Bryan Marion, Justice

Do not publish